Argued May 26, reversed June 17, 1971

JOHNSON, *Respondent, v.* DEPARTMENT OF
MOTOR VEHICLES, *Appellant.*

485 P2d 1258

*Al J. Laue,* Assistant Attorney General, Salem,

argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*Frederick T. Smith,* Portland, argued the cause for respondent. With him on the brief were Dusenbery, Martin, Bischoff & Templeton, Portland.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

The Department of Motor Vehicles (now Motor Vehicles Division) suspended petitioner's operator's license for refusal to submit to a chemical test of his breath. ORS 483.634. Petitioner appealed. ORS 482.-560. From a judgment in favor of petitioner by the court sitting without a jury, the Department has appealed, assigning as error that the trial court erred in finding that petitioner had not refused to take the breath test.

We have reviewed the facts in the light most favorable to petitioner. *Andros v. Dept. of Motor Vehicles,* 92 Adv Sh 1226, 5 Or App 418, 485 P2d 635 (1971). This case was tried before the decision in *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 477 P2d 237 (1970), 91 Adv Sh 1441, 478 P2d 654, Sup Ct *review denied* (1971). The trial court assumed that a refusal to take the required test until after the arrival of his attorney did not constitute a refusal within the meaning of the statute. *Stratikos* holds otherwise. It follows, then, that that evidence, without more, was insufficient as a matter of law to sustain petitioner's burden of proving that his license was wrongfully suspended. *Thorp v. Dept. of Motor Vehicles,* 4 Or App 552, 480 P2d 716 (1971).

The petitioner, through his daughter, contacted an attorney from the police station after his daytime arrest for operating a motor vehicle while under the influence of intoxicating liquor. The attorney testified:

"One of the questions which she asked me over the telephone which she said her father had asked her when called and said, 'What should I do?' was whether he should take the Breathalyzer test. I told her to call him back and immediately and try to reach him and tell him to say he would take the Breathalyzer when * * * I got there * * *."

He also testified he telephoned the police before going to the station and was told by them it was, in effect, now or never. The evidence showed that his advice was communicated to the petitioner, who himself testified:

"Well, then he [a police officer] tried to talk me into taking that Breathalyzer test again. In fact, we went into another room, got up, went into another room. * * *

"* * * * *

"MR. SMITH: Q And then what happened?

"A I told him after the advice I had gotten from my attorney I would have to wait until he arrived."

Petitioner now contends that this refusal "was caused by an erroneous impression created by the police officer."

■ The record, however, reveals only that the petitioner was properly advised of his right to counsel in conformity with *Miranda,*[1] including the statement that "he had the right to have an attorney present during any and all questions."

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

Petitioner does not claim the warnings given were erroneous. He points to nothing which supports his claim to the creation by the police of "an erroneous impression." We have found none. The "impression," if any, upon which petitioner relied was created by his counsel, not the police.

The judgment is reversed.